1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9

10  Scott Kenton,                        )

11                    Plaintiff,          )   No. CV 04-2005-PCT-PHX

                                          )
12              vs.                       )
                                          )   OPINION and ORDER
13  Linda Foster,                        )
                                          )
14                    Defendant.          )
                                          )
15  _____)

16          Pending before the Court is Plaintiff's Motion for Summary Judgment (doc.

17  #26), where in the plaintiff seeks judgment on his breach of contract claim and on

18  both of the defendant's counterclaims pursuant to Fed.R.Civ.P. 56.  Having

19  considered the parties' memoranda in light of the evidence of record, the Court

20  finds that the motion should be granted as to the defendant's counterclaims and

21  denied as to the plaintiff's claim.[1]

22  _____

23  [1]      Also pending before the Court is Plaintiff's Motion to Strike Portions of Affidavit of
    Linda Foster and Statement of Facts (doc. #39), wherein the plaintiff seeks to strike paragraph 8
24  of the defendant's affidavit (doc. #36) and the (second) paragraph 8 of the defendant's
    statement of facts (doc. #37) on the ground that Ms. Kverner's alleged statement to the plaintiff
25  that the defendant had agreed to sign a mutual cancellation of the escrow is inadmissible

26                                      - 1 -

1       This action involves an alleged contract for the purchase of a residential

2  property at 2081 Bryce Circle in Lake Havasu City, Arizona.  The defendant

3  states in her affidavit that she originally listed the property for sale for $575,000

4  with Joanna & Associates Realty on March 2, 2004, with the listing to expire on

5  August 31, 2004.

6       The parties agree that they entered into some type of a contract in July

7  2004 in which the plaintiff was to purchase the house for $250,000.  Although

8  there is no written purchase contract in the record[2], the parties both signed

9  escrow instructions dated July 20, 2004 through the Chicago Title Insurance Co.

10  The plaintiff states in his affidavit that the signed escrow instructions set forth the

11  terms of the parties' contract.[3]

12       The defendant states in her affidavit that she and the plaintiff entered into a

13  verbal agreement on July 12, 2004 to the effect that the plaintiff would purchase

14  the defendant's property for $250,000 with the understanding (1) that the

15  defendant would not be required to pay a real estate commission to Joanna &

16  Associates, and (2) that the plaintiff would provide the defendant with a place to

17

18  hearsay.  In light of the defendant's failure to file any response in opposition to the motion to
strike, the Court finds that the motion should be granted pursuant to LRCiv 7.2(i).

19    [2]

20      The summary judgment record contains an unsigned, partially completed Real
Estate Offer and Acceptance Contract dated July 12, 2004 that provided for a $250,000

21  purchase price and a $5,000 earnest money deposit by the plaintiff.  The document has no
evidentiary value.

22    [3]

23      The plaintiff has submitted as an exhibit a copy of a warranty deed signed by the
defendant on July 20, 2004 conveying real property in Mohave County to him.  The document

24  does not constitute significant probative evidence for purposes of the summary judgment motion
inasmuch as the actual description of the property to be conveyed is stated on the warranty

25  deed to be contained in an exhibit attached to the deed but that attachment is not included in
the summary judgment record.

26                       - 2 -

live rent free until her next check from the California lottery was received but not to exceed seven years.  The defendant further states in her affidavit that the plaintiff gave her an unsigned note setting forth the free rent agreement.[4]

The plaintiff made a series of small payments to the defendant that the parties memorialized in several signed writings in mid-July 2004 as being down payments towards the $250,000 purchase price of the house.[5]  The defendant states in her affidavit that the plaintiff repeatedly told her after July 20, 2004 that he was not going to provide her with a place to live for seven years.

Pursuant to the signed escrow instructions, the escrow was to close on September 9, 2004.  The plaintiff states in his affidavit that he had deposited his down payment and had signed all of the necessary closing and loan documents prior to noon on September 9th.  The defendant, however, signed a written statement on July 30, 2004 with Chicago Title cancelling the escrow; Chicago Title sent the escrow cancellation document to the plaintiff to sign, but he never did so.

The defendant states in her affidavit that she listed the property for sale for $399,000 on July 30, 2004 with Selman & Associates, and then entered into an agreement on July 31, 2004 to sell the property for $380,000, less sales commission to Selman & Associates, to Maureen Sieker, who is associated with

---

[4]
         The unsigned, undated, hand-printed note submitted as an exhibit states in toto: "250,000 + place to live til next check from Cal Lotte is recieved [sic]/not to exceed 7 years"

[5]
         The plaintiff has attached several of the notes as exhibits - the notes show that he paid the defendant approximately $1,524.  The defendant states in her affidavit that the plaintiff's exhibit shows "some" of the notes memorializing the advances he made to her.  The complaint alleges that the plaintiff paid the defendant $1,823.71 as consideration.

- 3 -

1   Selman & Associates.  The defendant further states that she believed at that time

2   that the sale to the plaintiff had been cancelled and that she was not obligated to

3   pay a commission to Johanna & Associates.

4        The defendant further states in her affidavit that she learned in late August

5   2004 or early September 2004 that the plaintiff was trying to close the escrow.

6   She wrote a letter to both the plaintiff and Chicago Title on September 9, 2004

7   stating that she had rescinded her agreement to sell the property to the plaintiff

8   "for undue influence, duress and fraud" and directed that all future communica-

9   tions concerning the matter be directed to her attorney.

10       There are two different unsigned and undated versions of the Chicago Title

11  Insurance Company's HUD-1 pre-audit settlement statements in the record.  One

12  shows "Cash to Seller" of $58,220.66 and the other shows $88,874.04.  The

13  difference is the amount of the "Total Sales/Broker's Commission": the former

14  document shows a $30,000 commission to be paid at settlement solely by the

15  defendant consisting of a $15,000 commission to Joanna & Associates Realty

16  and a $15,000 commission to Selman & Associates, and the latter document

17  shows no commission due at all.

18  Discussion

19       The plaintiff seeks summary judgment on his breach of contract claim, the

20  only claim raised in his complaint; the basic premise of the claim is that the

21  defendant anticipatorily repudiated their land sale contract by canceling it prior to

22  the time the plaintiff was to perform.   The relief demanded by plaintiff is in the

23  form of specific performance compelling the defendant to complete the sales

24  transaction as agreed.

25       Under Arizona law, specific performance is ordinarily available to enforce

26                                         - 4 -

contracts for the sale of real property because land is viewed as unique and an award of damages is usually considered an inadequate remedy.  Woliansky v. Miller, 135 Ariz. 444, 446, 661 P.2d 1145, 1147 (App. 1983).  Specific performance of an agreement for the sale of land should be decreed only if the agreement is in writing signed by the party to be charged, and the agreement is definite in its terms.  LeBaron v. Crismon, 100 Ariz. 206, 208, 412 P.2d 705, 706 (1966).

The plaintiff contends, albeit somewhat impliedly, that the escrow instructions signed by the parties fulfill the statute of frauds' requirement for a written land sale contract.  Escrow Instructions may constitute a land sale contract if the document identifies the parties, gives a legal description of the property being sold, states the purchase price, and provides a closing date for the escrow. See T.D. Dennis Builder, Inc. v. Goff, 101 Ariz. 211, 213-14, 418 P.2d 367, 369-70 (1966); see also, Daley v. Earven, 131 Ariz. 182, 185, 639 P.2d 372, 375 (App. 1982) (Signed escrow instructions are properly considered in determining whether a land sale agreement exists); Richards v. Simpson, 111 Ariz. 415, 417, 531 P.2d 538, 540 (1975) ("Escrow instructions may serve to comply with the statute of frauds.")

The Court cannot, however, conclude on the summary judgment record before it that the plaintiff has established as a matter of law that the escrow instructions at issue constitute a valid land sale contract.  The problem is that the record contains two different versions of the first page of the escrow instructions - one showing a requirement for a $5,000 earnest money payment and a $45,000 payment to be made by the close of escrow and the other showing no earnest money and a requirement for a $50,000 payment by the close of escrow.

Specific performance cannot be granted if the parties have not agreed on or more of the "important, essential or material terms" of the contract at issue, <u>Daley</u>, 131 Ariz. at 185, 639 P.2d at 375, and the plaintiff has offered no explanation for the noted discrepancy and has not shown that the differing terms related to earnest money are not important, essential or material to the parties' alleged contract.

The defendant, in her "response" to the summary judgment motion[6], conclusorily raises three arguments as to why the plaintiff is not entitled to specific performance. The Court is not persuaded by any of the them.

First, the defendant contends that the plaintiff breached his oral agreement for the purchase of the property, which included his promise to provide her with a place to live for seven years or until her next lottery installment. This contention is meritless as a matter of law because the alleged oral contract violates the statute of frauds.[7] Pursuant to A.R.S. § 44-101(6), any agreement for the sale of

---

[6]

The defendant, without any explanation, has unacceptably failed to file a memorandum of points and authorities in opposition to the plaintiff's summary judgment motion as required by LRCiv 56.1. The defendant's response is in effect merely an affidavit from the defendant containing no discussion of the relevant law. The defendant's statement of facts is in effect just a redrafting of the defendant's affidavit.

The Court notes that the defendant's response filed with the Court did not contain the exhibits that were attached to the Chambers' courtesy copy and the plaintiff's copy of the response. The defendant, without seeking the Court's permission for a late filing, formally filed the exhibits in support of her response over two months late. The filed exhibits, however, were not the scanned copies or photocopies of the originals of the exhibits that had been provided to Chambers and the plaintiff, but were typed copies of the originals (some of which where wholly or partially hand-written in their original state.) This was apparently done, without seeking the Court's permission, because the defendant's counsel was having scanner problems at the time. Although it is totally inexplicable to the Court why the defendant's counsel thought that this "solution" to his problem was in anyway permissible, the Court deems it unnecessary to strike the exhibits because the plaintiff subsequently filed with the Court his copies of the originals of the defendant's exhibits.

[7]

To the extent that the plaintiff may be raising it as an issue, any oral promise by the plaintiff, separate from the land sale agreement, to provide the defendant with a place to live for

- 6 -

1   real property requires that the agreement, or some memorandum thereof, be in

2   writing and signed by the person to be charged.  The document that the

3   defendant states represents the terms of the oral contract also does not satisfy

4   the statute of frauds because it is unsigned and does not sufficiently set forth the

5   parties and terms of the alleged agreement.  *See* T.D. Dennis Builder, Inc. v.

6   Goff, 101 Ariz. at 213, 418 P.2d at 369 ("We have held that to constitute a

7   sufficient memorandum of an oral agreement the writing must contain: an

8   identification of the parties, a description of the subject matter of the contract, the

9   purchase price and the time and conditions of payment.")

10        Second, the defendant's contention that the plaintiff agreed to the

11  cancellation of the escrow also is insufficient to create a triable issue of fact

12  because the defendant has not provided any admissible evidence in support of it.

13        Third, the defendant's contention that there was a mutual mistake

14  regarding her obligation to pay a real estate commission on the sale of the

15  property is also insufficient to create a triable issue of fact.  Under Arizona law, a

16  mutual mistake exists where "there has been a meeting of the minds of the

17  parties, and an agreement is actually entered into, but the agreement in its written

18  form does not express what was really intended by the parties."  Hill-Shafer

19  Partnership v. Chilson Family Trust, 165 Ariz. 469, 473, 799 P.2d 810, 814

20  (1990).  The defendant has not established any mutual mistake because there is

21  no significantly probative evidence of record showing that the plaintiff ever agreed

22  to pay a real estate commission to anyone or that he agreed that the contract for

23

24  either seven years or until the she obtained her next California lottery payment is also subject to
    the statute of frauds because the plaintiff has not established that any such agreement could be
25  performed within one year of its making.  A.R.S. § 44-101(6).

26                                    - 7 -

1  the sale of the property was in anyway contingent on the defendant not paying a

2  sales commission to anyone.

3       Although it is not an issue raised by any party, the Court notes that it could

4  not enter summary judgment awarding specific performance to the plaintiff on the

5  current record even if he had properly established the existence of a written

6  contract for the sale of the property and the defendant's breach of that contract.

7  Under Arizona law, specific performance is never a matter of absolute right.

8  Woliansky v. Miller, 135 Ariz. at  446, 661 P.2d at 1147.  In order for specific

9  performance to be an appropriate remedy at this time, the record must establish

10  that the defendant still owns the property.  See Canton v. Monaco Partnership,

11  156 Ariz. 468, 753 P.2d 158 (App. 1987) ("Because equity will not undertake to

12  do a vain and useless thing, specific performance will not be awarded against a

13  seller in a land contract when the seller has no title to the land he contracted to

14  convey.  This is true even where the want of title is caused by the seller's own

15  action in conveying the property to a third party.")   The plaintiff does not discuss

16  the issue of the current ownership of the property in his memoranda and nowhere

17  in the summary judgment record is there any evidence establishing that the

18  defendant still owns the property.  This alone is enough of a reason not to enter a

19  summary judgment granting specific performance.[8]

20  ───────────────

           [8]

21       The ownership of the property at issue is a concern to the Court.  While the
defendant stated in her verified answer, filed on January 5, 2005, that she then owned the
22  property, the Court's Internet review of online records of the Mohave County Assessor and
Mohave County Recorder raises an issue as to the current ownership of the property.  While the
23  Court is not taking judicial notice of those records for purposes of denying the summary
judgment motion, and is in fact not relying on them for any purpose at this time, the Court notes
24  for the parties' edification that those records appear to show that the defendant quitclaimed the
property to Douglas V. Huntley on June 2, 2004, that Huntley quitclaimed the property to Donald
25  R. Van Pelt on January 20, 2005, and that Van Pelt is the current owner of the property.

26                                    - 8 -

1   The plaintiff also seeks summary judgment on the defendant's two

2   counterclaims.  Having reviewed the evidence of record, and all legitimate

3   inferences arising therefrom, in the defendant's favor, the Court concludes that

4   the plaintiff is entitled to entry of summary judgment in his favor on the two

5   counterclaims because the defendant has not presented any evidence relevant to

6   her counterclaims from which a fair-minded jury might return a verdict in her

7   favor.

8       There is no issue as to the defendant's first counterclaim, wherein she

9   conclusorily alleges that she is a "vulnerable adult" for purposes of A.R.S. § 46-

10  455 and § 46-456, because the defendant has stated in documents filed with the

11  Court that she has dropped that counterclaim, albeit not formally so.

12      The plaintiff is entitled to summary judgment on the defendant's second

13  counterclaim, wherein she alleges that the plaintiff is liable for statutory damages

14  pursuant to A.R.S. § 33-420 for knowingly recording a lis pendens on the property

15  that was groundless, contained a material misstatement or was otherwise

16  invalid.[9]  First, the defendant has conceded the issue by failing to raise any

17  argument in her response opposing the plaintiff's argument that the counterclaim

18  fails as a matter of law.

19      Second, the counterclaim does in fact fail as a matter of law.  The

20  recording of a lis pendens is groundless for purposes of § 33-420 "only where the

21  claim that the underlying action is one affecting title to real property has no

22  arguable basis or is not supported by any credible evidence." Evergreen West,

23  Inc. v. Boyd, 167 Ariz. 614, 621, 810 P.2d 612, 619 (App. 1991).  In resolving this

24

---

[9]

25  A copy of the lis pendens is not part of the summary judgment record.

26                                      - 9 -

issue, the Court need only determine if there is "some basis" for concluding that the action affects title to real property, and in doing so it should not determine which party will prevail on the merits unless that is necessary to its decision. *Id.*, 167 Ariz. at 618, 810 P.2d at 618; <u>TWE Retirement Fund Trust v. Ream</u>, 198 Ariz. 268, 274, 8 P.3d 1182, 1188 (App. 2000).  The defendant has not submitted any significant probative evidence establishing that the plaintiff had no legitimate basis for recording the lis pendens.  Therefore,

IT IS ORDERED that Plaintiff's Motion to Strike Portions of Affidavit of Linda Foster and Statement of Facts (doc. #39) is granted.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment (doc. #26) is granted to the extent that the defendant's counterclaims are dismissed in their entirety and is denied with respect to the plaintiff's breach of contract claim.

IT IS FURTHER ORDERED that the parties shall file their Joint Pretrial Statement and any motions in limine no later than **November 6, 2006.**[10]

IT IS FURTHER ORDERED that the Pretrial Conference shall be held on **Monday, December 4, 2006 at 3:00 p.m.**, in Courtroom 601.

DATED this 13th day of September, 2006.

Paul G. Rosenblatt
United States District Judge

---

[10]

The parties are directed to review paragraphs 6 and 7 of the Scheduling Order (doc. #19), entered on June 14, 2005.